LANGUEIN, Respondent, v. OLSON, Appellant.

(227 N. W. 369.)

(File No. 6711.   Opinion filed November 8, 1929.)

*Johnson & Simons,* of Sioux Falls, for Respondent.

*H. Van Ruschen,* of Salem, for Appellant.

FULLER, C. The question is whether appellant's motion to vacate a default judgment against him, and for leave to answer, should have been granted. Appellant calls attention to the language of this court in Griswold Linseed Co. v. Lee, 1 S. D. 531, 47 N. W. 955, 36 Am. St. Rep. 761, which concerns Revised Code, § 2378, as follows: "The provisions of section 4939, Comp. Laws (now § 2378, R. C.), conferring upon courts the power to 'relieve a party from a judgment * * * taken against him through his mistake, inadvertence, surprise, or excusable neglect,' are liberal in their terms, remedial in their character, and were designed to afford parties a simple, speedy, and efficient relief in a most worthy class of cases, and this power should be exercised by courts in the same liberal spirit in which they were designed, in furtherance of justice, and in order that cases may be tried and disposed of upon their merits."

There is, however, a difference between a liberal exercise of the jurisdiction above mentioned, where facts are shown to invoke that jurisdiction, and the liberal exercise of credulity in determining

whether such facts have been proven. This appellant professes to have proven a single fact as the basis for the relief sought. The summons and complaint of plaintiff, in action upon four promissory notes, having been personally served upon appellant, as defendant, April 2, 1927, with default judgment entered May 4, 1927, appellant states that: "When affiant received the copies of the summons and complaint from said sheriff he looked them over but was unable to and did not understand the full import of same, as he was born in Sweden, came to the United States at the age of 5 years and had but a meagre education in the English language, so that he is unable to read court papers understandingly, and having recently suffered severe business reverses he felt himself unable to employ counsel at that time and thought he would not need to do so until shortly before the September term of court in McCook County, providing he received notice before that time that the case would be called for trial, and when he received no such notice he concluded that the case had been dropped and dismissed, as he never heard any more about it until said 1st day of February, 1928."

Granting that appellant's proposed answer contains the allegation of good defenses to the complaint, we have here a defaulting defendant whose only claim to the existence of "mistake, inadvertence, surprise, or excusable neglect," within the meaning of section 2378, supra, is that when served with summons and complaint on April 2, 1927, he did not understand the import of the same, that he was financially unable to employ counsel, and that he believed he need not consult counsel until he received notice that the case would be called for trial at a term of court which, he understood, would occur in the following September.

For the purpose of decision we need not question that, if the foregoing claim of appellant were fairly established as a fact to the satisfaction of the court, the relief prayed for should be granted. We shall, therefore, consider whether the foregoing statement in the affidavit of appellant is reasonably borne out or supported by those elements of additional showing which are uncontradicted.

Appellant took no steps to be relieved from default until after supplementary proceedings were commenced on the default judgment, and he claims to have not learned of the judgment until February 1, 1928, about 10 months after service of summons and

complaint or 9 months after entry of the judgment. For that length of time appellant claims to have been ignorant of the necessity of some action on his part to prevent the entry of judgment without trial. However, about February 11, 1927, another and different action was commenced against appellant in the name of Emerson-Brantingham Implement Company as plaintiff, in which matter appellant employed counsel "to look after" the case for him, and appellant states in this record that: "He now understands that an answer was prepared by said attorney which affiant signed, but that he did not at that time understand that said paper was called an answer but left the matter to his attorney's best judgment, and that in that case he was later informed by his said attorney that a notice of trial had been served and that the matter was to be tried in open Court at a regular term, but that affiant then felt that he had no sufficient means to go to the expense of taking depositions of absent witnesses, attorney's fees and other matters, and told his attorney that he could not then employ him any longer, and that he had no attorney representing him at said term of court."

If the answer in the last-mentioned case was timely interposed, as it may be inferred, the appellant is thus shown to have consulted counsel and to have made appearance by answer in a matter similar to the instant case before the time when he should have answered to avoid the default now in question. Having, in the other case employed counsel "to look after his case," and having, in that matter, signed some papers prepared by his attorney, it stands irrefutable that there was knowledge in his mind of some reason, obvious or occult, for doing those things which, in the other action, he did. That knowledge, established by appellant's statements in this record, cannot be reconciled with his present claim of such ignorance in the premises that he did not understand the summons and complaint, and did not know he should consult counsel or take any steps to avoid default judgment. If he was unable to understand the import of the summons and complaint, as he states—papers handed him by a sheriff—there was reason enough to lead any intelligent mind to inquire and ascertain the import of those papers.

Appellant does not claim to lack intelligence. He claims to have had a "meagre education in the English language so that he is unable to read court papers understandingly." However, his

statements that "he felt himself unable to employ counsel at that time" is an admission that he was aware of some reason for at least consulting counsel. The fact appellant was born in Sweden and came to the United States at the age of five years does not, of itself, and in the light of common knowledge, even tend to render probable a degree of ignorance, on his part, so extreme as that which he pleads in this case. In fact the perception and intelligence with which appellant seeks to maintain his allegation of ignorance furnishes a logical refutation of his averment. On May 5, 1927, the attorney for plaintiff wrote and mailed a letter to appellant stating that this judgment had been entered, and that execution would be issued. As to this appellant states: "Affiant denies that he ever received any letter from plaintiff's attorneys informing him that any judgment had been taken against him; that during pratically the entire year of 1927 he was driving a motor truck upon the highways, under a state permit, and usually left home at daylight each morning and returned late in the evening; that his wife usually called for the mail at the post office and handed him any letters that she thought might be important but did not call his attention to all letters that might have been received but placed them in his desk at home so he could look them over later if he desired, for the reason that he was usually tired from his travels and from handling freight during the day, so possibly he never did read all the mail that would come to him, but so far as he can recollect he never received any letter informing him of said judgment having been taken."

In respect of one of appellant's proposed defenses to three of the four notes pleaded in the complaint, his statement is to the effect that the notes, being signed by his codefendant Herbert Erickson and made payable to appellant, were traded by appellant to the plaintiff on account of the purchase price of a house and lot in Salem,; that, for the balance of the purchase price, appellant gave plaintiff a mortgage on the property; that after the mortgage note became due and appellant was unable to pay, he offered to reconvey the premises to plaintiff; that plaintiff preferred to foreclose in order to cut off some old personal property taxes against appellant, and agreed that, if appellant would vacate the premises after sheriff's sale and during the period of redemption, plaintiff would make no further claim against appellant for any part of the pur-

chase price. Appellant's ability to understandingly enter into this arrangement contributes, with other facts above stated, and with inferences reasonably derivative therefrom, to establish that he was not so innocent of knowledge of ordinary facts and affairs as he must appear to be to justify relief from this default.

A line must somewhere be drawn. Some measure of stability must be recognized in judgments by default regularly entered after personal service of process. Decisions of this court allowing relief from default judgments are as liberal in terms, to those seeking the relief, as the reported decisions of any court. But we find no decision of this or any other court according to which the relief has been allowed on the discredited statement of the defaulting defendant that, simply, he did not know the import of the summons and complaint and did not know he should consult or employ counsel until he was served with a further and additional notice of trial.

Appellant was not liable on one of the four notes pleaded in the complaint, as shown by the allegations of the complaint. The other notes he had indorsed. The judgment as entered against defendant was for the full amount of all four notes. But this mistake was corrected below by the trial court by amendment of the default judgment. Of the original error or its correction appellant may now complain. The case stands here as his application for relief from judgment entered on three of the notes, and, for reasons stated, we think the trial court's denial of appellant's motion was proper.

The order appealed from is affirmed.

SHERWOOD, P. J., and POLLEY, BURCH, and BROWN, JJ., concur.

CAMPBELL, J. (concurring specially). I concur in the result on the ground that the record fails to show any abuse of discretion on the part of the trial court, even assuming the entire truth of appellant's present contentions as to the facts existing at the time he was served with process.